JUSTICE COTTER
dissents.
¶28 dissent. I would reverse and remand for a new trial because the evidence does not support the verdict rendered by the jury.
¶29 The District Court determined prior to trial that Whitcraft was legally responsible for the accident. The jury found that the accident was the cause of injury to Murray. As the Court noted at ¶ 10, the court instructed the jury that-provided that the evidence shows that *375 they exist and that the cause of such damages was the accident in question-the damages should include past and future health care expenses, past and future pain and suffering, past and future emotional distress, and alteration of established course of life. (Emphasis added.)
¶30 The Court’s summary of the evidence focuses on alleged discrepancies in the record-what symptoms Murray might have initially reported, how various health care providers measured his degree of pain, etc. These “discrepancies” with respect to matters of little consequence are the most the Court can muster in support of the verdict because the overall record completely belies the notion that Murray was not injured, that he did not have pain, and that he did not experience devastation and distress at losing his baseball career to his injury. Although defense counsel argued mightily in closing for the return of a low verdict, the argument was premised on innuendo and little else-it was not premised on the evidence.
¶31 As an initial matter, there was no evidence that Murray had any pre-existing injuries to his neck and shoulder, much less degenerative changes occasioned by aging and overuse. He was a 19-year-old young man. Murray and his parents testified that he had no prior injury, as did his baseball coach who watched him perform on the baseball field day in and day out before the accident. His doctors likewise denied any pre-existing injury. Whitcraft did not impeach this evidence.
¶32 Second, the Court suggests that the collision could have caused “little, if any, impact to Murray’s shoulder.” Opinion, ¶ 13. There is no evidence to support this conclusion. In fact, Kyle Rector, the passenger who sat directly in front of Murray at the time of the accident on the same side of the vehicle, testified without contradiction that he suffered a partially torn labrum and rotator cuff as a result of the collision.
¶33 Third, there was copious and uncontroverted evidence that Murray experienced pain from the date of the accident forward and still does with activity today. He was referred from physician to chiropractor to physical therapist and back to physician in search of pain relief. The four health care providers who testified referenced varying levels of pain, including acute pain after surgery, pain during therapy and rehabilitation, and flaring pain upon attempting to throw a baseball. While the levels of pain surely fluctuated, which is to be expected, all health care providers testified that Murray experienced pain over a protracted period of time. Murray attended over 150 medical appointments and therapy sessions of various sorts, all in an *376 effort to stop the pain and put him back on the baseball diamond. All health care providers attributed his pain and limitations to his accident injury; all testified to his compliance as a patient; and none testified to doubts about his veracity. Whitcraft did not impeach these reports of pain through cross-examination.
¶34 On a more personal level, Murray and his parents testified to his pain and suffering, his limitations, his emotional distress and the alteration of his established course of life. His mother cried with her son over his loss of his college baseball career. She said the accident was “devastating” to Tyson, and that he was depressed and anxious. His father said that while his son was not a complainer, he couldn’t move his shoulder for about a week after the surgery and he was laid up from his work at a local store for about a month. He said his son was depressed. Whitcraft did not impeach any of this personal testimony through cross-examination.
¶35 Fourth, the Court provides excerpts of Dr. Tierney’s testimony in an effort to support the verdict. The fact is Dr. Tierney did not waiver in his assessment that the accident was responsible for all of Murray’s injuries. While Dr. Tierney admitted in response to defense counsel’s question that an impingement syndrome condition such as Murray experienced can be caused by aging and overuse, he did not attribute Murray’s injury to such problems:
MR. HAFFEMAN: And, other than the medical history that was provided to you by Mr. Murray and is reflected in the medical records, is there any way for you to tell whether the impingement syndrome that he had was caused by overuse versus a specific incident trauma?
DR. TIERNEY: All I can know is the temporal relationship of having no prior history, no prior treatment, had an injury, had treatment. So, based on the temporal relationship on a more probably than not basis, it is related to the accident.
In addition, Dr. Tierney testified elsewhere in response to a question of whether it is his opinion that Tyson’s injuries resulted from the motor vehicle accident: “All of his problems seemed to be post-injury. So, in my mind, on a more probable than not basis, it was related to the injury, yes.”
¶36 Nor was Dr. Tierney’s testimony about the bow incident as equivocal as the Court tries to suggest in its recap of testimony at ¶ 16 of the Opinion. When asked on re-direct whether he believed that the bow-hunting injury was related to the car accident, Dr. Tierney’s complete answer was as follows:
*377 DR. TIERNEY: Again, as we mentioned earlier, shoulder problems once initiated can flare intermittently depending upon the activity level that one is involved with. So, it is very possible that it was. Can you have another injury? Sure. But, it is not infrequent that people represent with problems with that joint. [Emphasis added for testimony omitted from the Court’s Opinion.]
¶37 Fifth, Dr. Tierney testified that the course of treatment Murray pursued was appropriate and necessary. The list of medical expenses that came into evidence without objection summarized the cost of those appropriate treatments and expenses. The total of the bills was approximately $35,000. The defendant did not cross-examine Murray, Dr. Tierney, or any of the other health care providers on the reasonableness or necessity of these expenses, nor did he present any evidence calling the charges into question. Rather, as the Court notes at ¶ 18 of the Opinion, counsel simply “suggested in his closing argument that the jury award a lower figure” than the sum requested.
¶38 The jury was instructed that in addition to medical expenses, it should award damages for pain and suffering, emotional distress and alteration of the established course of life. The testimony regarding Murray’s pain, suffering, emotional distress and loss of established course of life was uncontradicted. The evidence of the reasonableness and necessity of at least $26,000 of the past medical expenses was uncontradicted. Whitcraft’s counsel suggested to the jury that some of the medical expenses were related to a separate bow-hunting injury. However, the medical testimony establishing that it was more probable than not that the bow-hunting problems were related to the accident was uncontradicted. In short, the evidence establishing that Murray suffered the damages for which the District Court ordered compensation was overwhelming and virtually unimpeached.
¶39 The Court makes much of the fact that because the verdict form did not ask the jury to itemize the categories of damage, it is not possible to determine the precise nature of the damages awarded to Murray. This is a valid point. But, under the record before us, precision of calculation is not a necessary predicate to a new trial. It is clear the jury did not award both the uncontested medical expenses and damages for Murray’s pain, suffering, emotional distress and loss of established course of life. Because competent evidence of these elements of damage was presented and not refuted, the jury was obligated to make an award in this regard.
¶40 The Court tries but fails under the facts here to distinguish Renville from this matter. As here, the jury in Renville was presented *378 with a general verdict form. As here, the jury in Renville awarded an amount equal to medical expenses but ignored the evidence of pain and suffering and loss of ability to pursue her established course of life. As the Court notes, Renville experienced everyday pain, had to visit the emergency room on more than one occasion, and had nerve block injections. Opinion, ¶ 24. By comparison, Murray too received injections, and also engaged in painful therapy and even underwent surgery in an attempt to relieve his pain. If anything, Murray’s post-accident course was more rigorous and protracted than Renville’s. We concluded in Renville that the jury’s damage award was not supported by substantial evidence and reversed the district court for failing to grant a new trial. The same result is compelled here.
¶41 I dissent from our willingness to countenance a verdict that is truly unsupported in the record. I would reverse and remand for a new trial.
JUSTICES NELSON and WHEAT join the dissent of JUSTICE COTTER.